

**FILED**
**Jun 10, 2019**
**03:32 PM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD
### (HEARD MAY 31, 2019, AT KNOXVILLE)

| | |
|---|---|
| Gregory D. Hardin | ) Docket No. 2017-02-0333 |
| | ) |
| v. | ) State File No. 4528-2017 |
| | ) |
| W.A. Kendall & Co., Inc., et al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) |
| Compensation Claims | ) |
| Brian K. Addington, Judge | ) |

---

### Affirmed in Part, Modified in Part, Vacated in Part, and Remanded

---

The employee, a crew member of a tree and brush control company, suffered serious injuries when he was pulled into a wood chipper. The employer denied the claim, asserting the employee would not have been hurt unless he violated a safety rule. Following a trial, the court found the employee had sustained a compensable injury and the employer had not established the willful violation of a safety rule. As a result, the court awarded temporary disability benefits, permanent partial disability benefits, and medical benefits. The court also ordered the employer to pay the employee's attorney's fees and expenses. The employer has appealed. We affirm the trial court's conclusion that the employer failed to establish a willful violation of a safety rule, modify the trial court's award of medical expenses to require the employer to pay medical care providers directly, and vacate the award of attorney's fees and costs. The case is remanded to the trial court to conduct a hearing on whether attorney's fees and costs should be awarded and, if so, in what amount.

Presiding Judge Marshall L. Davidson, III, delivered the opinion of the Appeals Board in which Judge David F. Hensley and Judge Timothy W. Conner joined.

Todd I. Heird and Gregory H. Fuller, Knoxville, Tennessee, for the employer-appellant, W.A. Kendall & Co., Inc.

Gregory K. Haden and Matthew F. Bettis, Kingsport, Tennessee, for the employee-appellee, Gregory Hardin

## Factual and Procedural Background

Gregory Hardin ("Employee"), a thirty-one-year-old resident of Carter County, Tennessee, was employed by W.A. Kendall & Company, Inc. ("Employer"), a tree and brush control company for the utility industry. Among other things, Employee's duties included climbing trees and cutting and chipping debris. The majority of his work involved operating a wood chipper.

On January 18, 2017, Employee was working with a co-worker, Brandon Moore, finishing the clean-up portion of a job. Mr. Moore was clearing debris using a leaf blower while Employee fed brush into a wood chipper. Although Employee's work crew usually consisted of several more people, the other crew members had moved on to their next assignment.

Because Mr. Moore was operating the leaf blower some distance from where Employee was chipping wood, he did not witness the accident. Thus, Employee's version of events is the only eyewitness account of what happened. Employee described approaching the wood chipper as he had been trained and throwing the brush in as he had been trained. His right arm became entangled in the brush or a vine, and he was pulled into the chipper. He described the accident as follows:

> I was throwing brush into the machine like I had always done it. . . . I turned around to pick the brush up, carried it to the machine and throw [sic] it in there and my [right] hand got caught [on] vines or branches. . . . When I threw the brush in and the brush caught the feed-rollers, it jerked . . . I felt that it had caught me. . . . My first instinct was to pull back from it; and, as I did that, my feet slipped out from under me on some gravel. . . . And then I fell forward. My chest landed onto the feed table, onto the brush, and I was getting pulled on – on up into the machine. And, as I was getting pulled in, before I got to the rollers, my hand got to the rollers, I rolled over onto my back and started reaching for the last-chance cables. . . . And, by then, my – my hand and my arm was up into the feed rollers and my head was caught up into the corner of the machine, up above the rollers. And I yanked on the last-chance cables and they – I couldn't get them to work. So I started panicking and started kicking and, luckily, I kicked the last-chance cable – or the directional bar, with my left foot and it released me.

When Employee was able to free himself, his right hand had been amputated and he had serious injuries to his right ear and the side of his face. Upon his getting Mr. Moore's attention, Mr. Moore called for an ambulance. The other members of the work crew were also notified and left the location where they had started working to come back to the scene. One of the crew members was Employee's brother, who accompanied him to the hospital where Employee underwent extensive surgery.

Following the accident, Employer interviewed Mr. Moore, along with Dusty Shaffer, who was Employee's general foreman, and John Gibson, Employee's supervisor. Leslie Powell, one of Employer's safety directors, testified that "proper investigation protocol" would have included having the scene "locked down," taking photographs before moving equipment, marking the location of vehicles before moving them, and interviewing all potential witnesses. He acknowledged none of these things were done.

Mr. Powell also testified that, at the conclusion of Employer's investigation, Employer was unable to determine the cause of the accident or "how [Employee] got past the safeties on the equipment." He stated "[w]e don't know why" the accident occurred. Further, when shown a training video prepared by Employer, Mr. Powell acknowledged that the person demonstrating the use of the wood chipper was not in the proper position according to Employer's stated rationale for denying Employee's claim, namely that he had been loading the chipper from behind rather than from the side.

Andy Hardin, who was Employee's lead foreman, Mr. Shaffer, and Mr. Gibson, all testified that Employee was a safe worker who performed his wood chipping duties consistently with his training. However, approximately two months after he began working for Employer, and approximately ten months prior to his accident, Employee and the rest of his crew were written-up for operating the wood chipper improperly. Although the written reprimand does not indicate which individual was responsible for which infraction, Mr. Powell, the author of the write-up, testified that Employee was feeding the wood chipper from behind instead of from the side as is required. Employee received additional training, and he received no other write-ups.

Employer's area supervisor, Roger Bales, testified that he had no evidence Employee committed willful misconduct. Mr. Powell and Robert Williams, Employer's president, both testified that they believed the fact that Employee was injured was proof that he had violated a safety rule. Mr. Powell stated that "[t]he fact that he's injured indicates he didn't do it correctly."

After completing its investigation, Employer denied the claim, asserting Employee willfully violated a safety rule and/or committed willful misconduct.[1] Specifically, Employer alleged that Employee did not feed the wood chipper from the side, that he reached into the wood chipper, and that he was not in a position to reach the control bar

---

[1] Although Employer's denial of the claim was initially based on both defenses, Employer relied primarily on the willful misconduct defense at trial and solely on that defense on appeal. Thus, we refer only to willful misconduct for consistency and clarity. However, regardless of which of the two affirmative defenses is invoked, they are subject to the same analysis. *See Mitchell v. Fayetteville Public Utilities*, 368 S.W.3d 442 (Tenn. 2012).

while he was operating the chipper.[2]  On appeal, Employer relies on its assertion that Employee was not in a position to reach the control bar.[3]

Both Employer and Employee retained engineering experts to reconstruct the accident.  Employer's expert, Dr. Richard Ziernicki, testified that if Employee had been standing where Employer's rules required him to stand when feeding the chipper and where he had testified he was standing in his deposition, it would have been impossible for him to have been pulled into the machine.  Relying on a diagram of the wood chipper on which Employee had indicated approximately where he was standing at the time of the accident, Dr. Ziernicki opined that if Employee was being pulled into the machine from that angle, he would have hit the control bar and the machine would have stopped.  Dr. Ziernicki reached his conclusions without interviewing Employee.

By contrast, Charles Coones, Employee's expert, testified that he had Employee demonstrate his method of feeding brush into the chipper, in addition to other methods of analysis.  Mr. Coones stated that this method of reconstructing the accident provided a more accurate demonstration of how the accident occurred.  Mr. Coones, also a safety expert, testified that Employee's demonstration of what he was doing at the time of the accident was consistent with instructions in the wood chipper's manual for loading debris.  According to Mr. Coones, Employee's account of how the accident occurred was "both extremely consistent and is highly probable."  He concluded that Employee violated no safety rules or guidelines.  When asked whether there was any indication of willful misconduct, Mr. Coones replied "certainly not."  Further, when asked how Employer could have denied Employee's claim without being able to determine a cause of the accident, Mr. Coones stated, "it is not conceivable to me how you could do that."

The trial occurred over the course of three days.  Afterward, the trial court concluded Employer had not established that Employee engaged in willful misconduct and that Employer's denial of the claim was wrongful within the meaning of Tennessee Code Annotated section 50-6-226(d)(1)(B).  The court ordered Employer to pay temporary total disability benefits of $26,093.70, permanent partial disability benefits of $78,281.10, past medical bills in the amount of $72,482, and to provide reasonable and necessary future medical care.  The court also instructed Employee's attorney to submit an affidavit for attorney's fees and costs.

---

[2] A control bar is a device on the outside of the chipper that frames the hole where brush is fed into the machine and allows the operator to stop or reverse the direction of the rollers that catch and feed the brush into the blades of the chipper.

[3] According to Employer, "the violation at issue . . . [is] not that [Employee] carried brush from the brush pile towards the chipper using both hands; and [is] not that [Employee] used both hands to throw brush into the chipper.  Rather, the violation at issue in the instant case is that [Employee] threw the armload of brush into the chipper from a position where [he] could not reach the control bar."

4

Employer filed a notice of appeal prior to Employee's attorney's filing his affidavit for fees and costs. Upon receipt of the affidavit, Employer filed a response asserting the trial court no longer had jurisdiction and requested a hearing on the issue of fees and costs. Finding that no hearing was required, the trial court ordered Employer to pay attorney's fees in the amount of $232,182.27 and costs in the amount of $9,095.50. Employer appealed that order as well. We subsequently consolidated the two appeals.

## Standard of Review

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2018). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2018).

## Analysis

Employer raises six issues on appeal: (1) whether the trial court erred in finding Employer did not prove the defense of willful misconduct; (2) whether the trial court erred in finding Employer wrongfully denied Employee's claim pursuant to Tennessee Code Annotated section 50-6-226(d)(1)(B); (3) whether the trial court erred in ordering Employer to pay Employee directly for past medical expenses because no proof was presented that Employee actually paid any expenses; (4) whether the trial court violated Tennessee Code Annotated section 50-6-239(c) by ruling on the issue of attorney's fees without a hearing; (5) whether the trial court violated Employer's right to due process by ruling on the issue of attorney's fees without a hearing;[4] and (6) whether the trial court

---

[4] Employer provided notice of its appeal to the Attorney General of Tennessee based on its assertion that the trial court violated its right to due process in the court's application of Tennessee Code Annotated sections 50-6-239(c)(2) and 50-6-226(d)(1)(B) to award attorney's fees. However, Employer did not challenge the validity or constitutionality of a statute or regulation, so it is unclear why the Attorney General was notified. *See* Tenn. Code Ann. § 29-14-107(b) (2018); Tenn. R. Civ. P. 32. Regardless, the Attorney General declined to file a brief or participate in oral argument.

abused its discretion in awarding an unreasonable amount of attorney's fees. We address each issue in turn.[5]

*Willful Misconduct*

Employer argues that Employee committed willful misconduct when he did not feed brush into the wood chipper from a location where he could reach the control bar to stop the machine. Based on Employee's deposition testimony concerning his location when he was feeding the chipper and its safety expert's opinion, Employer asserts Employee was not feeding the chipper from a position where he could reach the control bar and, therefore, committed willful misconduct. Employee responds that he was operating the chipper consistently with his training and in the manner in which he had always operated the machine. He also asserts that his safety expert's opinion is the more reliable and that he did not commit any misconduct.

Tennessee Code Annotated section 50-6-110(a)(1) (2018) provides that "[n]o compensation shall be allowed for an injury or death due to . . . [t]he employee's willful misconduct." As we have previously observed, *Mitchell v. Fayetteville Public Utilities*, 368 S.W.3d 442 (Tenn. 2012), sets out the framework in which we must analyze the affirmative defense of willful misconduct. In order to prevail on this defense, an employer must establish the following: "(1) the employee's actual, as opposed to constructive, notice of the rule; (2) the employee's understanding of the danger involved in violating the rule; (3) the employer's bona fide enforcement of the rule; and (4) the employee's lack of a valid excuse for violating the rule." *Glasgow v. 31-W Insulation Co., Inc.*, No. 2017-05-0225, 2017 TN Wrk. Comp. App. Bd. LEXIS 51, at *13 (Tenn. Workers' Comp. App. Bd. Sept. 6, 2017).

However, before the *Mitchell* test becomes applicable, it must be shown there was an actual violation of a rule. *Burnett v. Builders Trans.*, No. 2017-08-0409, 2018 TN Wrk. Comp. App. Bd. LEXIS 5, at *11 (Tenn. Workers' Comp. App. Bd. Feb. 8, 2018) ("It stands to reason that the existence of a violation must occur to successfully invoke this defense."). The trial court concluded Employer had not established the elements of its affirmative defense. While we agree with this determination, we also conclude Employer did not establish by the greater weight of the evidence the existence of a rule violation in the first place.

Employer makes much of the fact that its Employee Handbook states that "strict compliance with our safety program is required of everyone" and that, with regard to rules for operating chippers, workers are "required" to abide by certain guidelines, one of which is to load chippers from the side of the feed table center line and then turn away

---

[5] Neither party raised any issue on appeal with respect to the amount of temporary total disability benefits or permanent partial disability benefits awarded. Thus, we do not address those issues.

from the machine. In addition, workers are admonished to "always make sure you can reach the control bar." Yet, the handbook also states that "these policies . . . are general guidelines of our current policies. They are not inflexible rules or requirements." Thus, according to Employee in his brief, "a so-called rule that is so malleable that the [Employer] can construe it as a hard and fast directive in one instance, and as a soft, flexible guideline in another instance depending on which construction suits [Employer's] purposes at the time, is no rule at all."

Regardless of the internal inconsistency in Employer's handbook, Employee testified that he operated the wood chipper on the day of the accident as he did on every other day and that he did so consistently with his training. His supervisors all agreed that he was a safe worker. In fact, he had been recommended for Employer's mentor program in which he would train new employees on the use of chippers.

Also, as noted above, two engineering experts testified. Employer's expert concluded Employee could not have been operating the chipper consistently with Employer's rules and still have gotten hurt. On the other hand, Employee's expert testified that Employee's version of events was consistent with the manner in which the accident unfolded and that it was "highly probable" that the accident occurred the way Employee demonstrated. He also testified Employee did not violate any safety rules or guidelines. According to Mr. Coones, Employee's demonstration of what he was doing at the time of the accident was consistent with the instructions in the wood chipper's manual for loading debris. When asked whether there was any indication of willful misconduct, Mr. Coones replied, "certainly not." The trial court accredited Employee's expert's testimony, pointing out errors in the reasoning of Employer's expert.[6]

Further, Employee was the only witness to the accident, and the evidence does not preponderate against the trial court's conclusion that events unfolded as he described them. The evidence also supports a finding that Employee was a safe worker and that the injury could have occurred in the absence of a safety violation. Employee's co-workers and supervisors testified that he was a safe worker who performed his duties consistently with his training and with the chipper's operating manual. Both Mr. Coones and Employer's area supervisor, Mr. Bales, testified they had no evidence Employee committed willful misconduct. Employee's expert, Mr. Coones, explained how the

---

[6] For instance, the court pointed out that Dr. Ziernicki's reconstruction of the accident using only a dummy could not account for movement on the part of Employee. The court also pointed out that Dr. Ziernicki relied exclusively on Employee's deposition testimony regarding where he was when he was pulled into the machine, which was an approximation of his location and was based on a small drawing of the machine that was not to scale. The court further observed that Dr. Ziernicki relied on certain facts that were in dispute and for which the court accepted contrary proof as being more credible.

7

accident could occur in the absence of a safety violation based on his reconstruction of the accident.[7]

In short, the greater weight of the evidence does not point to Employee having committed misconduct or having violated a safety rule, much less that he did so willfully as required by statute. As a result, the trial court's finding that Employee's injuries are compensable is affirmed.

*Award of Medical Expenses*

Employer also challenges the trial court's award of medical expenses incurred but which Employee did not pay. The trial court ordered Employer to pay to Employee $72,482 in medical expenses as a result of his injury. Employer asserts it was error to order payment directly to Employee rather than to the medical providers. Employee concedes in his brief that he is not personally owed reimbursement for medical expenses that remain unpaid and that he has not paid out-of-pocket.

Tennessee courts have addressed this issue as follows:

An employee is not entitled to personally receive payment for medical expenses unless he or she personally paid the medical expenses and is due reimbursement. Instead, employers must pay the providers of medical care directly for incurred medical expense.

We, therefore, find Tenn. Code Ann. § 50-6-204(a)(1) requires the employer to furnish free of charge to the employee reasonable and necessary medical treatment. The statute does not require the employer to pay the cost of medical treatment to the *employee*, unless the employee has personally incurred medical expenses.

*State Auto. Mut. Ins. Co. v. Hurley*, 31 S.W.3d 562, 565 (Tenn. Workers' Comp. Panel 2000). Accordingly, we modify the trial court's order to reflect that Employer must pay

---

[7] Employee testified that he fed material into the chipper using an arcing approach, as instructed by the machine's operator's manual, in which he would approach the chipper, throw the brush into the machine, and then walk away from the machine in an arc. Mr. Coones testified that this is indeed the approach described by the operator's manual and was the approach used by Employee when he demonstrated how he was operating the chipper on the day of the accident. Mr. Coones also testified that Employee's description of being caught by vines or brush and pulled in to the machine is consistent with the amount of time he would have had to react and to ultimately free himself. Mr. Coones further testified that if a person is feeding brush into the chipper in the manner described by the operator's manual, he or she cannot be within reach of the control bar at all times as Employer argues. Moreover, because of the location of the control bar outside the opening of the chipper, it is inaccessible once a person has become entrapped in brush and pulled into the machine.

reasonable and necessary medical expenses incurred as a result of the injury directly to the medical providers.

*Attorney's Fees and Costs*

The trial court ordered Employer to pay attorney's fees in the amount of $232,182.27 and costs in the amount of $9,095.50. Employer asserts that the trial court erred when it rendered a decision on the issue of attorney's fees and costs without affording Employer the hearing it requested. Specifically, Employer asserts the trial court violated Tennessee Code Annotated section 50-6-239(c)(2) as well as its right to due process. Employer also argues the trial court erred in finding its denial of the claim was wrongful within the meaning of Tennessee Code Annotated section 50-6-226(d)(1)(B) such that Employee is entitled to attorney's fees and costs.

The version of Tennessee Code Annotated section 50-6-226(d)(1) in effect at the time of Employee's injury provided that "the court of workers' compensation claims may award reasonable attorneys' fees and reasonable costs . . . when the employer: . . . [w]rongfully denies a claim by filing a timely notice of denial, or fails to timely initiate any of the benefits to which the employee is entitled." The current version of the statute provides that "wrongfully means erroneous, incorrect, or otherwise inconsistent with the law or facts." *Id.*[8] Generally, in determining whether a denial is wrongful, courts look at the information available to the employer at the time of the denial. *See Andrews v. Yates Services, LLC*, No. 2016-05-0854, 2018 TN Wrk. Comp. App. Bd. LEXIS 22, at *12 (Tenn. Workers' Comp. App. Bd. May 8, 2018) ("[I]t is within a trial court's discretion to consider an employer's decision to deny a claim in light of evidence or other information reasonably available to the employer at the time the claim was denied.").

In this case, the trial court's order for attorney's fees and expenses reflects the court's view that a hearing was not required to decide the issue. In its initial order, the court instructed Employee's attorney to submit an affidavit and request for attorney's fees. In its subsequent order awarding fees and costs, the court noted that Employer was given an opportunity to respond to Employee's attorney's affidavit and, rather than responding to the substantive issues, Employer asserted that the trial court lacked jurisdiction because a notice of appeal had been filed. Employer also, however, requested a hearing. We conclude it was entitled to one.

More than thirty years ago, the Tennessee Supreme Court declared that "the burden of proof on the question of what is a reasonable fee in any case is upon the

---

[8] Employee's injury occurred prior to the effective date of the statutory definition of wrongful in 2018. Nonetheless, we have applied the same definition to such injuries. *See Andrews v. Yates Services, LLC*, No. 2016-05-0854, 2018 TN Wrk. Comp. App. Bd. LEXIS 22, at *10 (Tenn. Workers' Comp. App. Bd. May 8, 2018).

plaintiff and plaintiff should be in a position to tender such proof." *Wilson Mgmt. v. Star Dist. Co.*, 745 S.W.2d 870, 873 (Tenn. 1988). "However, if a trial judge is prepared to fix a reasonable fee based upon the appropriate guidelines without first hearing plaintiff's proof, defendant must be accorded full opportunity to cross examine plaintiff's witness and present evidence on that issue." *Id.*

More recently, the Special Workers' Compensation Appeals Panel has made clear that "[i]n making an award of attorney['s] fees, a trial court should develop an evidentiary record and clearly and thoroughly explain its findings concerning each of the factors and the particular circumstances supporting its determination of a reasonable fee in each case." *Keen v. Ingles Mkts., Inc.*, No. E2018-00306-SC-R3-WC, 2019 Tenn. LEXIS 209, at *10 (Tenn. Workers' Comp. Panel May 14, 2019) (citations omitted).[9] "It is insufficient for a trial court merely to allude to the factors." *Id.* Thus, in *Keen*, an award of attorney's fees was set aside, even though the trial court had conducted an evidentiary hearing, because the court failed to adequately analyze each of the factors in RPC 1.5 and the particular circumstances supporting its decision.

Here, unlike in *Keen*, no hearing was held because the trial court believed one was not required under the circumstances. We conclude it was error for the trial court to decline to hold a hearing on the issue of attorney's fees and costs when Employer had requested one.[10] Accordingly, the trial court's order for attorney's fees and costs is

---

[9] The factors referred to in *Keen* are found in Tennessee Supreme Court Rule 8, RPC 1.5, which states in pertinent part:

> A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:
>
> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services;
> (8) whether the fee is fixed or contingent;
> (9) prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and
> (10) whether the fee agreement is in writing.

[10] Parenthetically, we note that even had Employer responded to the substance of Employee's request for attorney's fees rather than assert the trial court lacked jurisdiction, it still would not have had the opportunity to examine Employee's witnesses on the issue of fees.

vacated, and the case is remanded with instructions to hold an evidentiary hearing on whether attorney's fees and costs are appropriate and, if so, the amount of any such award.[11] We emphasize that, consistent with *Keen*, the court's determinations be thoroughly explained and supported by specific findings.[12] We also note that Employee acknowledges that the amount of attorney's fees awarded was incorrect, as he had requested $221,370, rather than $232,182.27, the amount awarded.

## Conclusion

For the foregoing reasons, we affirm the trial court's conclusion that Employer failed to establish the affirmative defense of willful misconduct and its finding that Employer must provide reasonable and necessary medical care for Employee's injuries. We modify the court's order to require Employer to pay medical providers directly for treatment related to those injuries. Finally, we vacate the trial court's order for attorney's fees and costs and remand the case for the court to conduct an evidentiary hearing on whether attorney's fees and costs should be awarded and, if so, in what amount. Each party shall bear their own costs on appeal.

---

[11] We are mindful that whether to award attorney's fees and costs for the wrongful denial of a claim is a separate issue from determining the amounts, if any, to award. However, these issues are sufficiently intertwined that, whenever feasible, they should be addressed together rather than in piecemeal fashion and thereby avoid multiple appeals involving attorney's fees, as happened in this case and in others. *See, e.g.*, *Travis v. Carter Express, Inc.*, No. 2018-03-0237, 2018 TN Wrk. Comp. App. Bd. LEXIS 67 (Tenn. Workers' Comp. App. Bd. Dec. 21, 2018).

[12] The trial court's rationale for finding Employer's denial of the claim was wrongful consisted of two sentences: Employer "did not speak with [Employee] before its denial, relied upon only circumstantial evidence, and had no expert proof at that time which established [Employee's] alleged misconduct. The investigation undertaken by [Employer] 'at the time the denial decision was made' was inadequate to establish its willful misconduct defense and, thus, was inconsistent with a complete picture of the facts as of the date of the denial." The court did not elaborate.



| | | |
|---|---|---|
| Gregory D. Hardin | ) | Docket No. 2017-02-0333 |
| | ) | |
| v. | ) | State File No. 4528-2017 |
| | ) | |
| W.A. Kendall & Co., Inc., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Brian K. Addington, Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 10th day of June, 2019.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Sent to: |
|---|---|---|---|---|---|---|
| Todd I. Heird | | | | | X | tiheird@mijs.com |
| Gregory H. Fuller | | | | | X | ghfuller@mijs.com |
| Gregory K. Haden | | | | | X | ghaden@hsdlaw.com |
| Matthew F. Bettis | | | | | X | mbettis@hsdlaw.com |
| Brian K. Addington, Judge | | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | | X | penny.patterson-shrum@tn.gov |

Matthew Keene
Deputy Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-0064
Electronic Mail: WCAppeals.Clerk@tn.gov